IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

TYHEEM BAKER, :
    Plaintiff, :
  : CIVIL ACTION
v. : NO. 11-2380
  :
SOLO NIGHTCLUB, LLC, et al., :
    Defendants. :

May 9, 2013                                                                                       Anita B. Brody, J.

**MEMORANDUM**

      Plaintiff Tyheem Baker brings this negligence action against Defendants Solo Nightclub, LLC, Lloyd Tran, Tam Tran, Clear Channel Communications, Inc., WUSL Power 99, Dwight Grant, Spring Del Associates, L.P., and SDAGP, Inc. I exercise jurisdiction over this action pursuant to 28 U.S.C. § 1332.

      Baker brings this suit in search of compensation for the injuries he sustained as a result of being shot by an unknown assailant while inside Solo Nightclub, LLC ("Club Solo"). Club Solo was owned and/or managed and operated by Lloyd Tran and Tam Tran. Spring Del Associates, L.P. and SDAGP, Inc. own the premises on which Club Solo was located. On the night of the shooting Club Solo was hosting the birthday party of Dwight Grant a/k/a Beanie Siegel ("Beanie Sigel party"). Prior to the event, Clear Channel Communications, Inc. advertised the Beanie Sigel party on its radio station, WUSL Power 99. Additionally, WUSL Power 99 conducted a live broadcast from Club Solo on the night of the shooting.

1

Currently before me are three separate motions for summary judgment: a motion of Defendants Solo Nightclub, LLC, Lloyd Tran, and Tam Tran (collectively, "Solo Nightclub Defendants"); a motion of Defendants Clear Channel Communications, Inc. and WUSL Power 99 (collectively, "Clear Channel Defendants"); and a motion of Defendants Spring Del Associates, L.P. and SDAGP, Inc. (collectively, "Spring Del Defendants").[1] For the reasons set forth below, I will grant the summary judgment motions of Clear Channel Defendants and Spring Del Defendants, and I will grant in part and deny in part the summary judgment motion of Solo Nightclub Defendants.

## I. BACKGROUND[2]

### A. The Shooting

On March 6, 2009, Plaintiff Tyheem Baker decided to head into Philadelphia from New Jersey for a night out. Deposition of Tyheem Baker ("Baker Dep.") 56:17-58:12. Before leaving New Jersey, Baker received a call from a friend inviting him to Club Solo. *Id.* Baker was initially skeptical about going to Club Solo. *Id.* at 58:5-12. However, after he heard on the radio station WUSL Power 99 that Club Solo would be hosting the Beanie Sigel party, he decided to go there. Baker Dep. 58:5-12; Deposition of Stacey Thomas ("Thomas Dep.") 8:25-9:9.

Club Solo was owned and operated by Solo Nightclub Defendants.[3] Club Solo was located at 520 N. Christopher Columbus Boulevard at the intersection of Christopher Columbus Boulevard and Spring Garden Street. There were approximately 500-600 people in attendance at the Beanie Sigel party. Thomas Dep. 59:21-23. At a prior Beanie Sigel party in 2008, there had

---

[1] Defendant Dwight Grant has not filed a motion for summary judgment.
[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).
[3] Club Solo is no longer in business. Richard Koory Deposition ("Koory Dep.") 81:5-6.

been approximately 2,200 people in attendance. Pl.'s Resp. to Solo Nightclub Defendant's Motion ("Pl.'s Resp.") Ex. 7.

Baker arrived at Club Solo a little before 11:00 p.m. on March 6, 2009. Baker Dep. 186:8-10. Baker had to wait in line to enter the club. *Id.* at 68:2-4. While Baker was waiting in line, a security guard used a metal detector wand to search Baker and check his ID. *Id.* at 69:16-19, 73:23-74:2. When Baker reached the entrance of Club Solo, he paid his entrance fee and was patted down by another security guard. *Id.* at 69:16-19, 73:12-15.

All of the security guards were clearly identifiable because the word "Security" was printed on their shirts. *Id.* at 72:8-20. Baker observed that both the women and men near him were being searched by the security guards. *Id.* at 71:19-72:1. However, he also noticed that DJ Khaled,[4] and a group of guys who were with him, entered the club without being searched. *Id.* at 70:17-71:15. While in the club, Baker observed four security guards in the lower part of the club, and three security guards near the stage. *Id.* at 228:5-7.

At approximately 1:35 a.m. on March 7, 2009, Baker was shot inside Club Solo. *Id.* at 174:6-12. Baker was unable to identify the shooter, and the incident was not recorded because the video camera surveillance inside Club Solo was not working. *Id.* at Ex. 4.

**B. Prior Violence**

Prior to the shooting inside Club Solo, there had been several other violent events or threats of violence that occurred on Club Solo's premises:

- On August 20, 2007, police were called to break up a fight inside the club. Pl.'s Resp. Ex. 7.

---

[4] DJ Khaled is not a party to this suit.

- On January 21, 2008, Club Solo contacted the police because a man was causing a disturbance in front of the club. When police came, the man told police, "[I]f I see you cops again I'll kill both of you." *Id.*
- On October 24, 2008, a large fight broke out in front of the club and caused additional fights to occur throughout the Club Solo parking lot. According to the police officer on the scene, "The public and police were put at risk due to the large fights." *Id.*
- On February 29, 2009, a man in the Club Solo parking lot fired several gunshots from his car. Solo Nightclub Defendant's Motion ("Solo Nightclub Mot.") Ex. D at 5.

Additionally, the following violent events or threats of violence occurred within a one block radius of Club Solo during its operation:

- On September 17, 2007, a man was observed near Club Solo with a gun in his lap. Pl.'s Resp. Ex. 3, 7.
- On May 3, 2008, a man walking from Club Solo was shot at 500 N. Christopher Columbus Blvd. Pl.'s Resp. Ex. 7.
- On June 21, 2008, a man was observed firing a gun into the air at 76 E. Spring Garden Street. *Id.*
- On August 18, 2008, several men were shot at 100 Spring Garden Street. *Id.*

Based on the numerous incidents of criminal and disorderly conduct that had occurred in and around Club Solo, the Commonwealth of Pennsylvania ("Commonwealth") filed a civil complaint against Defendants Club Solo and Tam Tran on November 20, 2008. Pl.'s Resp. Ex. 3. In the Complaint, the Commonwealth sought to enjoin Club Solo from operating for one year and requested that the court order Club Solo to surrender its liquor license. *Id.* To support its

Complaint, the Commonwealth listed numerous disruptive and violent events that had occurred on and around Club Solo's premises and required police intervention. *Id.*

**C. Defendants' Connection to the Shooting**

Although Club Solo was owned and operated by Solo Nightclub Defendants, the building and property on which Club Solo was located was owned by Spring Del Defendants. On or about April 4, 2006, Spring Del Defendants leased the premises to JP Entertainment LLC.[5] Spring Del Defendants' Motion ("Spring Del Mot.") Ex. B. On March 9, 2007, JP Entertainment LLC assigned the lease to Solo Nightclub Defendants. Spring Del Mot. Ex. C. The lease granted Solo Nightclub Defendants the right to operate the premises as a restaurant, bar, and club with live entertainment. Spring Del Mot. Ex. B at 1.6. Solo Nightclub Defendants "operated the business without any oversight by [Spring Del Defendants]." Deposition of Richard Koory[6] ("Koory Dep.") 33:24-25. As part of the lease transaction, Spring Del Defendants sold to Solo Nightclub Defendants the liquor license to be used at the premises. Spring Del Mot. Ex. B at 1.8. While Solo Nightclub Defendants owned the liquor license, Spring Del Defendants maintained a security interest in the license. Koory Dep. 29:21-30:4. The liquor license that Solo Nightclub Defendants purchase from Spring Del Defendants was issued by the Pennsylvania Liquor Control Board under a Conditional Licensing Agreement. Clear Channel Defendants' Motion (Clear Channel Mot.) Ex. G. The Conditional Licensing Agreement permitted Club Solo to serve liquor, but placed several restrictions on the license and the premises. *Id.* Specifically, Solo Nightclub Defendants were forbidden from using a promoter for events at the club. *Id.* at 7.d.

---

[5] JP Entertainment LLC is not a party to this suit.
[6] Richard Koory is not a party to this suit. Koory is the general counsel for Spring Del Defendants. Koory Dep. 8:10-13.

5

Despite this restriction on Solo Nightclub Defendants' liquor license, Club Solo used the promoter, DJ Boo Entertainment,[7] to promote the Beanie Sigel party that took place on March 6-7, 2009. Thomas Dep. 9:8-15; 21:25-22:11. DJ Boo Entertainment hired Clear Channel Defendants to promote the party on the radio and to have a live broadcast at Club Solo during the Beanie Sigel party. *Id.* at 9:10-15, 22:7-19. The Clear Channel Defendants owned WUSL Power 99, and used the radio station to advertise the Beanie Sigel party. *Id.* 8:7-11. As part of the package purchased by the promoter, WUSL Power 99 gave out some free passes to the Beanie Sigel party. *Id.* at 25:12-20. Clear Channel Defendants did not provide security for the Beanie Sigel party and were not involved in any aspect of the security provided by Club Solo. *Id.* at 71:14-74:5.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of

---
[7] DJ Boo Entertainment is not a party to this suit.

6

proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Baker alleges that he was shot inside Club Solo by an unknown assailant as a result of Defendants' negligence. To succeed on a claim of negligence, a plaintiff must establish the following four elements: (1) the existence of a duty or obligation recognized by law; (2) defendant's breach of that duty; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant.[8] *Orner v. Mallick*, 527 A.2d 521, 523 (Pa. 1987). All Defendants contend that they were not negligent because they owed no duty to protect Baker from the criminal conduct of a third party.[9] "Where there is no duty of care, there can be no negligence." *Maxwell v. Keas*, 639 A.2d 1215, 1217 (Pa. Super. Ct. 1994).

### A. Clear Channel Defendants

Clear Channel Defendants argue that Baker cannot establish a claim for negligence against them because they had no special relationship with Baker and therefore they did not owe

---

[8] "[F]ederal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990). The parties agree that Pennsylvania law governs this action.

[9] Alternatively, Clear Channel Defendants and Solo Nightclub Defendants argue that they did not breach any duty owed to Baker. These Defendants also make additional arguments.

a duty to protect him from the criminal conduct of a third party. Whether a defendant owes a duty of care to a plaintiff is a question of law. *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1044 (Pa. 1998). "Under common law there is no duty to control the conduct of a third party to protect another from harm, except where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or . . . with the intended victim of the conduct, which gives the intended victim a right to protection." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. Ct. 2000).[10] Thus, "[a]s a general rule, a person is not liable for the criminal conduct of another in the absence of a special relationship imposing a pre-existing duty." *Elbasher v. Simco Sales Serv. of Pa.*, 657 A.2d 983, 984 (Pa. Super. Ct. 1995) (citing *Feld v. Merriam*, 485 A.2d 742, 746 (Pa. 1984)).

Baker alleges that Clear Channel owed a duty to protect him from the harm of the unknown assailant because Clear Channel "acted in concert" with Solo Nightclub Defendants to host the Beanie Sigel party and that "[p]eople who attended were no less the customers or patrons of Solo than they were of Clear Channel." Pl.'s Sur-reply to Clear Channel Defendants' Mot. 1. Section 314A of the Restatement (Second) of Torts lists the special relationships between a defendant and an injured party that give rise to a duty to aid or protect. *Brezenski*, 755 A.2d at 41; *see also T.A. v. Allen,* 669 A.2d 360, 362 (Pa. Super. Ct. 1995) (applying Section 314A). Section 314A lists the following special relationships which give rise to a duty to aid or protect another:

> (1) A common carrier is under a duty to its passengers to take reasonable action

---

[10] Section 315 of the Restatement (Second) of Torts embodies this common law principle. Moreover, Pennsylvania courts have adopted this section of the Restatement. *See, e.g., T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995). In relevant part, section 315 provides: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315.

8

        (a) to protect them against unreasonable risk of physical harm, and

        (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

    (2) An innkeeper is under a similar duty to his guests.

    (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

    (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Restatement (Second) of Torts § 314A. None of the special relationships listed above existed between Clear Channel Defendants and Baker. Baker feebly attempts to argue that Clear Channel Defendants were somehow co-possessors of land with Solo Nightclub Defendants. However, the evidence demonstrates that Clear Channel Defendants involvement with Club Solo was limited to advertising the Beanie Sigel party and broadcasting live from the club on the night of the event. Clear Channel Defendants had no control over Club Solo or the security provided inside the club. Clear Channel Defendants are not liable for negligence because they did not owe Baker a duty to protect him from the criminal conduct of a third party. Therefore, I will grant Clear Channel Defendants' motion for summary judgment.

## B. Spring Del Defendants

Spring Del Defendants argue that Baker cannot establish a claim for negligence against them because Spring Del Defendants did not owe a duty to Baker to protect him from the criminal conduct of a third party because they had no special relationship with Baker. Unlike Clear Channel Defendants who obviously did not have a special relationship with Baker as defined in section 314A of the Restatement (Second) of Torts, Spring Del Defendants owned the premises where the shooting occurred. Thus, Baker argues that Spring Del Defendants were a

possessor of land and owed Baker a duty to protect him. *See* Restatement (Second) of Torts § 314A(3). Spring Del Defendants allege that they were a landlord out of possession because their lease with Solo Nightclub Defendants gave Solo Nightclub Defendants sole control of the premises, and that a landlord out of possession does not owe a duty of care to third parties injured on the leased premises.

Under Pennsylvania law "title ownership is not determinative of whether a defendant is a possessor of land . . . ." *Kostar v. Pepsi-Cola Metro. Bottling Co., Inc.*, No. 96-7130, 1998 WL 748306, at *3 (E.D. Pa. Oct. 23, 1998). The Pennsylvania Supreme Court has relied upon section 328E of the Restatement (Second) of Torts to define who is a possessor of land. *See Stanton v. Lackawanna Energy, Ltd*., 886 A.2d 667, 677 (Pa. 2005). Section 328E defines a possessor of land as:

> (a) a person who is in occupation of the land with intent to control it or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E. "In Pennsylvania, a landlord out of possession, in most instances, is not responsible for injuries suffered by third parties on the leased premises." *Dorsey v. Cont'l Assocs.*, 591 A.2d 716, 718 (Pa. Super. Ct. 1991).

Spring Del Defendants did not retain control of the property when they leased it to Solo Nightclub Defendants. Solo Nightclub Defendants operated Club Solo without any oversight by Spring Del Defendants. Baker unsuccessfully argues that despite Spring Del Defendants lack of control over the property, Spring Del Defendants were not a landlord out of possession because they maintained control over Solo Nightclub Defendants' liquor license. The evidence

10

establishes that Spring Del Defendants sold the liquor license to Solo Nightclub Defendants, but retained a security interest in the license.  Regardless, even if Spring Del Defendants had some control over the license, Baker does not contest that Spring Del Defendants had no control over the premises leased to Solo Nightclub Defendants.  Spring Del Defendants were a landlord out of possession because they lacked this control.  Spring Del Defendants are not liable for negligence because they did not owe Baker a duty to protect him from the criminal conduct of a third party.  Therefore, I will grant Spring Del Defendants' motion for summary judgment.

**C.  Solo Nightclub Defendants**

Baker asserts two distinct claims of negligence against Solo Nightclub Defendants.  The first claim is that Solo Nightclub Defendants were negligent because they failed to take reasonable security measures to keep patrons safe.  The second claim is that Solo Nightclub Defendants were negligent because they violated the terms of the Conditional Licensing Agreement ("CLA"), which granted them permission to serve liquor in Club Solo.  Solo Nightclub Defendants argue that under either theory of negligence Baker cannot establish a claim against them because Solo Nightclub Defendants did not owe a duty to Baker to protect him from the criminal conduct of a third party.  While Solo Nightclub Defendants acknowledge that they were a possessor of land, they contend that they owed no duty to protect Baker from the shooting because it was not foreseeable that a shooting would occur inside Club Solo.

Alternatively, Solo Nightclub Defendants argue that even if they owed Baker a duty to protect him, they still cannot be found liable for either of Baker's negligence claims.  Solo Nightclub Defendants allege that Baker cannot succeed on his first claim of negligence because they undertook reasonable security measures to keep Club Solo patrons safe and therefore did not breach their duty to protect Baker.  Solo Nightclub Defendants allege that Baker cannot

succeed on his second claim of negligence because, assuming they violated the terms of the CLA, these violations were not the proximate cause of Baker's injuries. Lastly, Solo Nightclub Defendants argue that even if Baker's negligence claims survive summary judgment, Defendant Tam Tran should be dismissed from this action because he is protected by the corporate veil of Club Solo and cannot be held liable.

### 1. Duty to Protect Baker

Solo Nightclub Defendants argue that they did not owe a duty to protect Baker from the unknown assailant because it was not foreseeable that a shooting would occur inside Club Solo. "Pennsylvania law . . . does not hold the proprietor of a business establishment responsible for injuries to its patrons caused by criminal conduct of a third party unless the possibility or likelihood of criminal activity could reasonably have been foreseen or anticipated." *Kenny v. Se. Pa. Transp. Auth.*, 581 F.2d 351, 354 (3d Cir. 1978). In *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878-79 (Pa. 1968), the Supreme Court of Pennsylvania applied Section 344 of the Restatement (Second) of Torts to determine if a movie theater owed a duty of care to a patron who had been injured by firecrackers on its premises. Section 344 of the Restatement (Second) of Torts provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> > (a) discover that such acts are being done or are likely to be done, or
> >
> > (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344. Additionally, the commentary to section 344, also cited approvingly in *Moran*, provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344 cmt. f. Thus, a business owes a duty to protect its patrons from the criminal conduct of a third party if the business has actual or constructive notice that such an act is reasonably foreseeable. *Moran*, 246 A.2d at 878-79.

Baker argues that Solo Nightclub Defendants owed a duty to protect him from the shooting because they had constructive notice that such an act might occur. At the time Baker was shot, several violent or threatening events had already occurred on the premises. Two fights inside the club had required police intervention. One of these fights started in the front of the club and then led to additional fights in the parking lot. According to the police officer on the scene, "The public and police were put at risk due to the large fights." Pl.'s Resp. Ex. 7. Additionally, a patron who was denied reentry, threatened to kill the police who were called by Club Solo to assist with his unruly behavior. Lastly, only a week prior to the Baker incident, a man in the parking lot of Club Solo fired several gunshots.

In addition to the incidents occurring on the premises, four gun related incidents occurred within a one block radius of Club Solo during its operation. Moreover, in November 2008, the Commonwealth filed a lawsuit against Defendants Club Solo and Tam Tran, seeking to enjoin the club from operating for one year and requesting that the court order Club Solo to surrender

13

its liquor license. In support of its lawsuit, the Commonwealth provided a laundry list of violent and disorderly conduct that had occurred on and around the Club Solo premises.

Solo Nightclub Defendants argue that they did not have constructive notice that a shooting might occur inside their club because a shooting had never before occurred inside. However, a business may be placed on constructive notice that a violent crime may occur without having already experienced the exact same violent crime in the exact same location on its premises.

In *Moran*, a patron had been injured at a movie theater by firecrackers exploding in the restroom. 246 A.2d 877. The theater argued that even though there had been twelve other firecracker incidents for each of the last two years on its premises, it did not have constructive notice that a firecracker explosion would occur in the restroom. *Id.* at 878. The Supreme Court of Pennsylvania rejected the theater's argument and explained, "[I]t is not necessary for defendants to be specifically aware of the exact location on their premises where patrons might be injured by the tortious acts of third persons." *Id.* Rather "notice, either actual or constructive, of prior acts committed by third persons within their premises which might cause injuries to patrons," was sufficient to establish a duty to protect. *Id.* at 878-79. Additionally, in *Murphy v. Penn Fruit Company*, 418 A.2d 480, 483-84 (Pa. Super Ct. 1980), the court held that constructive notice of possible violent crimes in a grocery store parking lot did not depend on the occurrence of prior violent crimes on the premises. In *Murphy*, only non-violent crimes like shoplifting and purse snatches had occurred inside the store and off the premises behind the parking lot. *Id.* Thus, it was reasonable to conclude that "if enough purse snatches occurred in and around the store, it was inevitable that someone would be hurt and that appellant was charged with taking steps to prevent such or post a warning." *Id.* at 484; *see also Morgan v.*

*Bucks Assocs.*, 428 F. Supp. 546, 550-51 (E.D. Pa. 1977) (non-violent car thefts occurring on premises put the defendant on constructive notice that violent criminal conduct on the part of third persons, such as the assault of the plaintiff, might occur on the premises).

The fact that someone fired gun shots on Club Solo's premises only a week before Baker was shot inside the club is alone sufficient to establish that Solo Night Club Defendants had constructive notice that patrons might be violently injured on the premises by third persons. This incident, however, was not the sole incident that provided Solo Nightclub Defendants with constructive notice. Two fights occurred, and a person threatened violence, on the premises. Additionally, there were four gun-related incidents within a block of the premises. Solo Nightclub Defendants do not deny that they had notice of these incidents. Moreover, Solo Nightclub Defendants were in the middle of being sued by the Commonwealth as a result of the numerous disorderly and violent events that had occurred on and around the premises and required police intervention. If they had not been put on notice before this lawsuit, the filing of the suit certainly put Solo Nightclub Defendants on notice to have reasonably anticipated criminal conduct on the part of third parties. *See Bonilla v. Motel 6 Operating L.P.*, No. 09-712, 2011 WL 4345786, at *8 (W.D. Pa. Sept. 15, 2011) (some of the factors leading to finding constructive notice were the "frequency with which the local police were called for assistance" and the fact that the manager "knew that it was considered to be a high crime location"). Club Solo's use of metal detector wands also indicates that it was foreseeable to Solo Nightclub Defendants that someone might bring a weapon such as a knife or gun into the club. Finally, the character of the business conducted by Solo Nightclub Defendants, a large nightclub with a liquor license, which on occasion had accommodated 2,200 people, also leads to the conclusion that Solo Nightclub Defendants should have reasonably anticipated violent criminal conduct on

the part of third persons. *See* Restatement (Second of Torts) § 344 cmt. f. ("the place or character of the business" may establish constructive notice); *Bethea v. Bristol Lodge Corp.*, No. 01-612, 2002 WL 31859434, at *10 (E.D. Pa. Dec. 18, 2002) (holding that incidents of disorderly conduct, a single shooting in the parking lot, and the character of the business (a nightclub with topless dancing and liquor) were sufficient to establish constructive notice that a patron might be shot inside the club).

The multiple incidents of violence occurring both on and around the premises, the lawsuit by the Commonwealth, the club's use of metal detector wands, and the nature of the business itself, would make it reasonable for Solo Nightclub Defendants to have anticipated that a patron might get shot inside the club by a third party. Therefore, Solo Nightclub Defendants' owed a duty to protect Baker from the violent criminal conduct of a third party.

### 2. Breach of Duty to Protect Baker

Solo Nightclub Defendants claim that the evidence indisputably establishes that they undertook reasonable security measures to protect Club Solo patrons and therefore did not breach their duty to protect Baker. Thus, Solo Nightclub Defendants contend that Baker cannot succeed on his claim that Solo Nightclub Defendants were negligent for failing to take reasonable security measures to keep patrons safe. Whether a defendant has breached a duty of care is generally a jury question. *Emerich*, 720 A.2d at 1044. "However, the issue of whether an act or a failure to act constitutes negligence may be removed from consideration by a jury and decided as a matter of law when the case is free from doubt and there is no possibility that a reasonable jury could find negligence." *Id.*

Solo Nightclub Defendants assert that the two rounds of security that patrons went through before entering the club (the search by the metal detector wand and the pat down and ID

16

check), as well as the presence of seven security guards inside Club Solo, undoubtedly proves that they implemented reasonable security measures to protect patrons. They support this position with the expert opinion of security consultant, Jack F. Dowling who opines that "[t]he security measures taken by Solo at the time of the incident were adequate to deter and detect any reasonably foreseeable crime risks." Solo Nightclub Mot. Ex. E at 4.

Despite Solo Nightclub Defendants rendition of the facts, there are several facts that could lead a jury to conclude that Solo Nightclub Defendants breached their duty to protect Baker by failing to implement reasonable security measures. Although Baker and the people he observed near him went through two rounds of security, Baker also observed that DJ Khaled, and a group of guys that were with him, did not go through security. Additionally, at the time of the shooting, the video camera surveillance inside the club was not working. Lastly, security consultant Ira S. Somerson concludes in his expert opinion that Solo Nightclub Defendants "failed to provide adequate security to deter, deny, detect and respond to potential violent security incidents that were foreseeable." Solo Nightclub Mot. Ex. D at 7.

The limited facts presented on the security measures taken by Solo Nightclub Defendants indicate that a genuine dispute of material fact exists as to whether Solo Night Club Defendants implemented reasonable security measures. The dueling expert opinions, which rely on the same set of facts to reach opposing conclusions, buttress the determination that a genuine dispute of material fact exists. Therefore, I will deny Solo Nightclub Defendants' motion for summary judgment on Baker's claim that Solo Nightclub Defendants were negligent because they failed to take reasonable security measures to protect him.

### 3. Proximate Cause

Solo Nightclub Defendants argue that Baker cannot succeed on his second claim of negligence, that Solo Nightclub Defendants were negligent for violating the terms of the CLA, because failure to comply with the CLA was not the proximate cause of Baker's injuries. Baker alleges that Solo Nightclub Defendants violated the CLA in the following ways: (1) using a promoter for events at the premises; (2) failing to become compliant with the Responsible Alcohol Management provision of the Liquor Code; and (3) failing to use a transaction scan device to check IDs of all patrons purchasing alcoholic drinks. Solo Nightclub Mot. Ex. A.

In order to succeed on a claim of negligence, a plaintiff must establish a causal connection between the defendant's breach and the resulting injury. *Orner*, 527 A.2d at 523. "To satisfy the requirement of causation, the complainant must demonstrate that the breach was both the proximate cause and the actual cause of his injury. Proximate cause, is a question of law, to be determined by the judge, and it must be established before the question of actual cause may be put to the jury." *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. Ct. 1993) (citation omitted). "Proximate cause does not exist where the defendant's negligence was so remote that the defendant cannot be held legally responsible as a matter of law for the harm done." *Holt v. Navarro*, 932 A.2d 915, 921 (Pa. Super. Ct. 2007). "Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Reilly*, 633 A.2d at 210. The court must "evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm when it appears to the court *highly extraordinary* that the actor's conduct should have brought about the harm." *Brown v. Phila. Coll. of Osteopathic Med.*, 760 A.2d 863, 868 (Pa. Super. Ct. 2000) (internal quotation marks omitted).

Assuming that Solo Nightclub Defendants violated the CLA by using a promoter, failing to scan IDS, and failing to become compliant with a provision of the Liquor Code, a patron getting shot inside Club Solo was not the "natural and probable outcome" of these violations. It is "highly extraordinary" that these violations of the CLA should have or did result in the shooting. Solo Nightclub Defendants' violations of the CLA were not the proximate cause of Baker's injuries. Therefore, I will grant Solo Nightclub Defendant's motion for summary judgment on Baker's second claim of negligence, that Solo Nightclub Defendants were negligent for violating the CLA.

### 4. Tam Tran's Liability

Solo Nightclub Defendants argue that Defendant Tam Tran should be dismissed from this action because he was the owner of Club Solo, which was set up as a limited liability company that shields him from personal liability. Pennsylvania law provides that "the members of a limited liability company shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company." 15 Pa. Cons. Stat. Ann. § 8922(a).[11] "This statute prevents members of a limited liability corporation from incurring liability for the debts of the corporation simply by reason of their status as members." *L.R. McCoy & Co., Inc. v. Beiler*, No. 10-1301, 2011 WL 925410, at *6 (E.D. Pa. Mar. 16, 2011). However, a corporate officer or shareholder may still be held individually liable for the obligations of the corporation if the court pierces the corporate veil. *Bethea*, 2002 WL 31859434, at *14; *see also Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89-90 (Pa. 1983).

---

[11] Subsection (e) provides an exception to this rule. *See* 15 Pa. Cons. Stat. Ann. § 8922(e). However, Baker does not argue that this exception applies.

"Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his." *Wicks*, 470 A.2d at 89-90.

Baker argues that Tam Tran can be held individually liable because "Solo was not a true corporate entity but instead, a cover or sham." Pl.'s Resp. 18. Baker appears to be arguing that this Court should pierce the corporate veil and then Tam Tran may be held individually liable. Baker produces absolutely no evidence to support application of the doctrine of piercing the corporate veil. Therefore, Tam Tran, as the owner of Club Solo, cannot be held individually liable. I will grant Solo Nightclub Defendants' motion for summary judgment in part and dismiss Tam Tran from this action.

## IV. CONCLUSION

For the reasons set forth above, I will grant the summary judgment motions of Clear Channel Defendants and Spring Del Defendants. Clear Channel Defendants and Spring Del Defendants are dismissed from this action. I will grant in part and deny in part the summary judgment motion of Solo Nightclub Defendants. Defendant Tam Tran will be dismissed from this action. Baker may proceed against Defendants Solo Nightclub, LLC and Lloyd Tran on his claim that they were negligent in their failure to undertake reasonable security measures to protect Club Solo patrons from the criminal conduct of third persons. However, Baker may not proceed on his claim that Solo Nightclub Defendants were negligent for violating the terms of the CLA.

                                                 s/Anita B. Brody
                                              _____
                                              ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: